## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CYNDI JOHNSON, | : | |
| Plaintiff, | : | Case No. 2:06-cv-628 |
| v. | : | Judge Holschuh |
| UNIVERSITY HOUSING, | : | Magistrate Judge King |
| Defendant. | : | |
| | : | |

<u>Memorandum Opinion and Order</u>

This matter is before the Court on a motion to dismiss pursuant to Fed.R.Civ.P. 37 and a motion for an order declaring the plaintiff a vexatious litigator under Ohio law filed by the defendant, University Housing. Also before the Court is a motion to strike the defendant's motion declaring the plaintiff a vexatious litigator filed by the <u>pro</u> <u>se</u> plaintiff, Cyndi Johnson. For the following reasons, University Housing's motion to dismiss and motion to declare Ms. Johnson a vexatious litigator under Ohio law will be denied. Ms. Johnson's motion to strike will be denied as well.

I. <u>Motion to Dismiss</u>

A.

The facts involving University Housing's motion to dismiss pursuant to Fed.R.Civ.P. 37 do not appear to be in dispute. Ms. Johnson filed suit in this Court on July 25, 2006 alleging, <u>inter</u> <u>alia</u>, that University Housing refused to lease an apartment to her because of her race. Throughout the course of this litigation, University Housing has attempted to take Ms. Johnson's deposition, but those efforts have repeatedly failed.

According to the record, on October 27, 2006, University Housing sent Ms. Johnson a letter listing several dates as potential opportunities to depose her and requested Ms. Johnson choose a date convenient to her. (<u>Motion for Change of Deposition Date and Venue, for "Audio Only" Recording of Deposition and to Impose Restrictions on Notary Public</u> (doc. #16), ex. A). It appears that Ms. Johnson responded by stating that she was not available until, at the earliest, February 1,

2007. (Id. ex. B). In response, University Housing placed a notice on the docket that it intended to depose Ms. Johnson on December 6, 2006 at 10 a.m. (Notice to Take Deposition of Cyndi Johnson (doc. #15)).

Ms. Johnson subsequently filed a *Motion for Change of Deposition Date and Venue, for "Audio Only" Recording of Deposition and to Impose Restrictions on Notary Public* stating that "Defense Counsel has established a deposition date and venue that is based solely upon his availability and personal preferences." (Motion for Change of Deposition Date and Venue, for "Audio Only" Recording of Deposition and to Impose Restrictions on Notary Public (doc. #16) p. 1). Moreover, Ms. Johnson indicated that

> due to personal and professional obligations, seasonal employment, religious holidays and other pending litigation, the Pro Se Plaintiff is not available for a deposition prior to January 12, 2007. Further, Plaintiff asserts that counsels request is intended to unduly burden the Pro Se Plaintiff Johnson and selfishly accommodates only himself, as opposing counsel offers no compromise between Plaintiff's preferred date of February 1, 2007 and his own selfishly 'turkey, trimmings and deposition' date.

(Id.) Ms. Johnson also requested that (1) her deposition occur at the United States District Courthouse "to assure that she will not be unduly prejudiced;" (2) the Court reporter and Notary Public reside from somewhere outside Athens, County; and (3) the taping of the deposition be limited to audio only.

To conform with Ms. Johnson's request, University Housing filed another *Notice to Take Deposition* indicting that the new date would be on January 17, 2007 at 10 a.m. at the Athens County Courthouse. (Notice to Take Deposition of Cyndi Johnson (doc. #18)). The Notice also indicated that the deposition would be tape recorded by a Notary Public. (Id.)

On January 17, 2007, the Court held a telephonic discovery conference because Ms. Johnson failed to appear for her deposition. (Order (doc. #26)). During the conference, Ms. Johnson stated that she was unable to attend because she was caring for her sick mother in Cleveland. Ms. Johnson also requested that "she not be required to undergo a deposition for an indeterminate period and that the dates established by the Court in the Preliminary Pretrial Order, Doc. No. 14, be extended, if necessary to accommodate her request." (Id.) University Housing objected to that request, and the Court ordered that the deposition be completed by February 28, 2007. (Id.) The Court indicated that

in the future "a brief, additional extension" would be granted "only upon written motion supported by medical documentation clearly justifying the requested, brief, extension." (Id.) University Housing subsequently scheduled Ms. Johnson's deposition for February 26, 2007.

On February 5, 2007, Ms. Johnson filed a Motion for an Extension of Time to move the deposition date "to a date not prior to April 1 and not later than April 14, 2007." (Motion to Extend Deposition Date and to File Supporting Documents Under Seal (doc. #28)). Ms. Johnson sought the extension "due to extraordinary circumstances in her personal life." (Id.) Ms. Johnson failed to appear for her February 26, 2007 deposition.

Both parties subsequently moved for sanctions. The basis for Ms. Johnson's motion involved University Housing's responses to a set of interrogatories. On the other hand, University Housing's motion for sanctions was based on Ms. Johnson's failure to appear for the scheduled February 26, 2007 deposition.

On June 11, 2007, the Court issued an Opinion and Order that granted Ms. Johnson *Motion for an Extension of Time* and denied both parties' *Motions for Sanctions*. The Opinion and Order stated, in relevant part, that Ms. Johnson's "deposition must take place no later than July 31, 2007. There will be no extension of this date at plaintiff's request, for any purpose. Moreover, plaintiff is EXPRESSLY ADVISED that her failure to participate in a deposition on or before July 31, 2007, will result in the dismissal of the action pursuant to the provisions of F.R. Civ. P. 37." (Opinion and Order (doc. #47) p. 2).

From the June 11, 2007 Opinion and Order to present, Ms. Johnson still has not been deposed. Motions filed in the interim indicate that Ms. Johnson believes that she does not have to be subjected to a deposition under this Court's jurisdiction. (See, e.g., Motion for Change of Judge Norah King and Motion for Sanctions Against Defendant (doc. #50) p. 2 ("Plaintiff contends that she does not have to consent to a deposition in a matter that has received no replyfrom [sic] the proper party defendant")). In addition to Ms. Johnson's failure to be available to be deposed, University Housing alleges that Ms. Johnson "has not made the disclosures required by F. R. Civ. P. 26(a)(1) ...." (Motion to Dismiss (doc. #64) p. 3).

B.

In the motion to dismiss, University Housing argues that Ms. Johnson "has willfully refused to participate in the discovery process." (Id.) Specifically, it contends that, based on Ms. Johnson's

3

conduct and actions, this case should be dismissed under Fed.R.Civ.P. 37. In support, University Housing cites Ms. Johnson's evasive behavior to avoid being deposed; Ms. Johnson's failure to make Rule 26 disclosures; Ms. Johnson's blatant disregard for the Court's orders; and University Housing's allegedly unnecessary expenditures in attempting to obtain a West Virginia court reporter to satisfy Ms. Johnson's requests. All of this, according to University Housing, has been prejudicial to its ability to maintain and establish a viable defense.

Ms. Johnson's response is best recounted by the plain language of her objection to University Housing's motion to dismiss (reproduced verbatim):

> Defendants latest pleading is merely an attempt to circumvent the complaint, as he has done throughout this proceeding. Defendant has yet to respond to the complaint, as plaintiff has previously advised the court. The defendant is University Housing dba Student Real Estate, Inc. and defendant has been served and properly joined. The court may have ruled to the contrary, but the plaintiff vehemently contends that the court is a lie and purposefully so.
>
> Further, counsels goal in this matter is to avoid the complaint and protect the public image of the defendant. However, defendant is a corrupt business run by corrupt men; defendant does not wish to rent to plaintiff because she is black and defendants business practices support this claim. Moreover, plaintiff understands and appreciates the age old expression, "sick and tired," because she is indeed: "sick and tired" of counsels sobbing about plaintiff's absence from previously set depositions. Plaintiff has stated and confirmed the reasons for her absence and asks that counsel cease to use this as a basis for any argument presented to the court.
>
> Finally, counsel dare to argue that plaintiff has not responded to discovery requests when his tired butt has failed to respond to the complaint. Plaintiff again declares this proceeding a joke and marvels in counsels absurd expectations, particularly since the proper party defendant has willfully refused to respond to the complaint. Plaintiff has been greatly prejudiced by defendants conduct and advises her honor and the defendant that the court may NOT impose two standards: one for smart aleck pro se parties and one for good old boy attorneys and defendants who lie through their teeth to avoid this action. Again, the defendant is not University Housing Management Services, Inc., the court and counsel merely wish it were. Wherefore plaintiff objects to defendants motion to dismiss and again move for a change of judge in this action and/or respectfully ask her honor to: get off this case.

(Plaintiff's Objection to Defendants Motion to Dismiss (doc. #65)).[1]

C.

Fed.R.Civ.P. 37, entitled "Failure to Make Disclosure or Cooperate in Discover; Sanctions," authorizes a court to impose sanctions, including dismissing an action, when a party fails to comply with a court order or participate in discovery. The relevant portions of Rule 37 applicable to this case are Ruled 37(b)(2) and 37(d), which state, in relevant part:

**(b) Failure to Comply With Order**

\*\*\*

**(2) Sanctions by Court in Which Action is Pending**. If a party ... fails to obey an order to provide or permit discovery ... or fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

\*\*\*

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order ... to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

\*\*\*

**(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection**. If a party ... (1) fails to appear before the officer who is to take the deposition, after being served with a proper notice ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action

---

[1] The Court notes that it has previously addressed Ms. Johnson's claim regarding the proper defendant in this lawsuit. (See Order (doc. #49)).

>authorized under subparagraphs (A), (B), and (c) of subdivision (b)(2) of this rule. *** In lieu of any order or in addition thereto, the court shall require the party failing to act ... to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b)(2) and 37(d).

Under Fed.R.Civ.P. 37, a district court is afforded discretion in choosing an appropriate sanction to impose on a party that fails to comply with its orders or participate in discovery. Bass v. Jostens, Inc., 71 F.3d 237, 241 (6th Cir.1995). The Court of Appeals for the Sixth Circuit noted that the sanction of dismissing a lawsuit has been upheld "because it accomplishes the dual purpose of punishing the offending party and deterring similar litigants from such misconduct in the future." Id. (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43 (1976)). The court of appeals stated that "dismissal is an appropriate sanction where the party's failure to cooperate with the court's discovery orders is due to willfulness. A willful violation occurs whenever there is conscious and intentional failure to comply with the court order." Id. (citing Brookdale Mill, Inc. v. Rowley, 218 F.2d 728, 729 (6th Cir.1954)); see also The Proctor & Gamble Co. v. Haugen, 427 F.3d 727 (10th Cir.2005)("Dismissal with prejudice represents an extreme sanction and thus is considered appropriate only in cases involving willfulness, bad faith, or some fault on the part of the party to be sanctioned")(internal citations and quotations omitted).

When considering dismissing a complaint for failure to comply with a court order or participate in discovery, a court should consider four factors: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less dramatic sanctions were imposed or considered before dismissal was ordered. Harmon v. CSX Transportation, Inc., 110 F.3d 364, 366-67 (6th Cir.1997)(internal quotations omitted)(citing Regional Refuse System Inc. v. Inland Reclamation Co., 842 F.2d 150, 153-55 (6th Cir.1988)).

Harmon elaborated that

>[w]ith regard to the first factor, this court has stated that dismissal of an action for an attorney's failure to comply should only be ordered where there is a clear record of delay or contumacious conduct. Similarly, with regard to the third factor, the court has explained that where a plaintiff has not been given notice that dismissal is

>contemplated, a district court should impose a penalty short of dismissal unless the derelict party has engaged in bad faith or contumacious conduct. Finally, with regard to the fourth factor, although it is clear that the failure of the district court to impose or make explicit its consideration of lesser sanctions is not fatal, this court recently stated that, in the absence of such consideration, and in the absence of contumacious conduct, an alternative sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal with prejudice.

Id. at 367-68 (internal citations and quotations omitted).

For guidance in determining whether it is an abuse of discretion to dismiss a case with prejudice under Rule 37, the Court turns to Bass, Harmon and Voit v. Jefferson County Sheriff's Department, No. 01-5887, 31 Fed.Appx. 189 (6th Cir. Mar. 21, 2002)(unreported). Cases that involve dismissing a complaint for failure to comply with a court order typically have specific and detailed factual backgrounds that the court relies on in making its determination. Thus, a case's facts and background are sometimes best summarized by the reviewing court.

In Bass, the court of appeals concluded that the district court did not abuse its discretion by dismissing a case under Rule 37. The facts are as follows:

>Defendant JLC served interrogatories and requests for production of documents on plaintiff on February 4, 1993. As a result of plaintiff's refusal to respond to that discovery request, defendant filed a motion to compel on May 20, 1993. On June 8, 1993, a magistrate entered the first discovery order, mandating that plaintiff "[p]rovide JLC the documents it has requested and respond to defendant's interrogatories on or before Monday, June 14, 1993."
>
>Plaintiff failed to comply with this first discovery order. Therefore, defendant filed a second motion to compel on August 14, 1993. On September 15, 1993, a second discovery order was entered by the magistrate, compelling plaintiff to serve answers to defendant's interrogatories and to provide all documents plaintiff had previously withheld within seven days. Plaintiff failed to comply with the magistrate's second discovery order.
>
>As a result of plaintiff's repeated failures to cooperate in discovery, defendant JLC entered a motion to dismiss for failure to comply with discovery. A hearing on defendant's motion to dismiss was held on October 22, 1993 before the magistrate. On October 22, 1993, the magistrate issued a third order and conditional report and recommendation to dismiss the complaint for failure to comply with discovery. In this order, plaintiff was given seven days in which to produce all the documents which she had been ordered to produce twice before. The order further ordered plaintiff's deposition to be taken within 20 days, specifically stating that "plaintiff is to be available each day so that the scheduling of this matter is only affected by

>the availability of the lawyers. Plaintiff's lawyer is also ordered to be available as necessary to take this deposition. It is recommended that if either or both of these events (providing documents and taking plaintiff's deposition) do not occur, the judge should dismiss this case with prejudice as a sanction for plaintiff and plaintiff's counsel failure to cooperate in discovery." Plaintiff did not respond to this order.
>
>On October 28, 1993, defendant JLC served notice for plaintiff's deposition to be taken on November 5, 1993, commencing at 9 a.m. Service was accomplished by hand delivery and by fax. Plaintiff did not file a motion to quash or a motion for a protective order. At the eleventh hour, plaintiff's counsel indicated that he and plaintiff would not be able to attend the deposition. At about 9:30 a.m. on November 3, 1993, less than 48 hours before her properly noticed deposition was to take place and nine days after service of the deposition notice, plaintiff's counsel faxed a letter to defendant stating that plaintiff would not be available to be deposed until 2 p.m. on November 5, 1993, because an evidentiary hearing was scheduled on November 5th in state court in an unrelated case. *** At about 1:30 p.m. on November 3, 1993, plaintiff's counsel sent a second letter to defendant indicating that plaintiff would not be able to appear for the deposition until 2 p.m. on November 5th because of a serious cardiovascular condition, and also stating that plaintiff could not be deposed for "more than a couple of hours." Attached to plaintiff's second letter was an October 29, 1993 letter, purportedly from plaintiff's doctor, which stated that plaintiff had been advised to "reduce her work schedule to one court case per day." However, this letter was not signed by plaintiff's doctor. Defendant's counsel immediately wrote back to plaintiffs counsel informing him that defendant JLC would be willing to begin plaintiff's deposition at 8 a.m. on November 5, 1993, then break from 10:30 a.m. until 1 p.m. so that plaintiff could attend the [state court] hearing, and then resume at 1:00 p.m. until the deposition was completed. On November 4, 1993, on the day before the deposition was to begin and after defendant's legal representatives had traveled to Detroit from Minneapolis and Oklahoma, plaintiff's counsel faxed a letter to defendant's local counsel stating that plaintiff would not appear until 2 p.m. on November 5th, and again stated that the deposition would have to be limited in duration because of her health.

Bass, 71 F.3d at 239-40. On November 5, 1993, the plaintiff failed to appear at the deposition, and, because the plaintiff failed to obey four discovery orders, the case was dismissed with prejudice.

In evaluating whether the court abused its discretion, the court of appeals first concluded that the record supported the district court's determination that the plaintiff acted willfully and intentionally in his failure to comply with the discovery orders. Id. at 241. Evidence of this included the facts that the plaintiff's attorney was removed from the state court case and the plaintiff was medically released prior to the deposition date. Id. at 242. The court of appeals continued:

>In regard to the second factor, plaintiff's repeated failure to cooperate in discovery

8

> was unfairly prejudicial to defendant. Plaintiff had refused for over a year to completely answer interrogatories and to produce documents or tapes relevant to the allegations in her complaint, which prevented defendant from gathering evidence to support its defense. Moreover, as of the final order of dismissal, eighteen months after defendant had served its discovery request, plaintiff still had not tendered a complete set of discovery responses nor had she tendered all required documents and tape recordings to defendant. Also, plaintiff's deposition still has not been taken more than three years after the events underlying this lawsuit. ***
>
> In regard to the third factor, plaintiff was amply warned that her continued failure to comply with the court's discovery orders would result in the case being dismissed. At the October 10, 1993 hearing on defendant's third motion to compel and motion to dismiss, the magistrate informed plaintiff's counsel that he had previously failed to comply with the court's discovery orders and that if he did not comply with the most recent order, which demanded that he provide defendant with all requested documents and provide the plaintiff for deposition before November 9, 1993, the magistrate would recommend that the case be dismissed. Also in her order and conditional report and recommendation, the magistrate specifically recommended that if plaintiff failed to comply with the order to provide documents and make the plaintiff available for deposition, the case would be dismissed with prejudice as a sanction for failure to cooperate. Thus, plaintiff was sufficiently warned of the sanction of dismissal.
>
> In regard to the fourth factor, the magistrate had imposed previous less drastic sanctions in lieu of dismissing the case. On October 10, 1993, the court imposed monetary sanctions against plaintiff for her failure to cooperate by ordering plaintiff to pay the costs of producing documents to defendant. However, this sanction did not have the desired effect and plaintiff still refused to cooperate with discovery.

Id. at 242-43.

Next, in Harmon, the court of appeals concluded that the district court did not abuse its discretion by dismissing a case with prejudice for failure to prosecute and comply with a court order. The plaintiff in Harmon failed to answer interrogatories properly, and following letters from opposing counsel and orders from the Court, Harmon failed to respond to the defendant's request to set deposition dates. Thus, the defendant moved to dismiss pursuant to Rule 37, and the court granted the motion.

Harmon's counsel subsequently filed a Rule 60(b) motion explaining that his legal assistant was ill, and, through no fault but his own, failed to comply with the court's order. The district court denied that motion, and Harmon appealed. The court of appeals affirmed concluding, in pertinent

9

part:

> Mindful, then, of the [four] *Regional Refuse* factors and the Supreme Court's decision in [*Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962)], we are satisfied that the district court did not abuse its discretion when it dismissed Harmon's complaint for failure to prosecute and to comply with an order of the court. The district court did not order dismissal until nearly a full year after CSXT served Harmon with its original discovery requests. Although this delay does not rival the delay attributed to the plaintiff in *Link*, Harmon's intransigence was equally, if not more, egregious because it was accomplished with disregard for CSXT's persistent requests and with contempt for an order of the court. By way of contrast, in *Link*, there [was] no indication in the record that the defendant tried to get the interrogatories answered earlier.
>
> \*\*\*
>
> We have no doubt that CSXT was prejudiced by Harmon's failure to respond to its interrogatories. Not only had CSXT been unable to secure the information requested, but it was also required to waste time, money, and effort in pursuit of cooperation which Harmon was legally obligated to provide. Furthermore, there can be no argument that Harmon was without notice that the district court was contemplating the dismissal of his complaint. CSXT had filed a motion to dismiss and Harmon had requested additional time to respond.
>
> We recognize that the district court did not articulate its consideration of lesser sanctions. As we have noted, this shortcoming, if indeed it is one, is not necessarily fatal. That is to say, the district court's consideration or imposition of lesser sanctions is a *factor* in our review, not a *sine qua non* for affirmance. We have never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's neglect, and, indeed, any such rule would conflict with *Link* and the plain language of Federal rule of Civil Procedure 37(b)(2). We are loathe to require the district court to incant a litany of the available lesser sanctions. Concomitantly, we do not assume that lesser sanctions were not considered simply because their consideration is not articulated.
>
> \*\*\*
>
> Presented with a record of sufficiently egregious conduct, then, this court need not hesitate to conclude that a district court has not abused its discretion by ordering dismissal as the first and only sanction. We are satisfied that the record in this case documents conduct sufficiently egregious to support the district court's exercise of its discretion, in spite of its failure to expressly consider lesser sanctions.

Id. at 368-69 (internal citations and quotations omitted).

10

Finally, in Voit, which is an unpublished opinion, the court of appeals, without any analysis, affirmed the district court's dismissal of a case factually similar to the one at hand. The plaintiff in Voit filed a civil rights action against the sheriff's department and various officers. After filing suit, however, the plaintiff moved to California, and the defendants experienced difficulty obtaining the plaintiff's deposition. The court of appeals stated:

> The district court referred all pretrial matters to a magistrate judge, who conducted several scheduling hearings and status conferences by telephone, as Voit was now residing in California. Discovery commenced and, during a telephonic status conference conducted on October 27, 2000, the magistrate judge directed Voit to appear in person for a deposition to be conducted by the defendants before December 1, 2000. The defendants sent Voit a letter suggesting six possible dates for the deposition and requesting Voit to choose the date most convenient for him. Instead, Voit sent his own "notice of deposition" to be conducted by telephone on November 27, 2000, one of the dates suggested by the defendants. The defendants replied by certified letter that, pursuant to the magistrate judge's oral order, Voit was to present himself in person for deposition and noticed the deposition for November 30, 2000, in the law offices of defense counsel. On November 27th, someone professing to be a California attorney assisting Voit called defense counsel and stated that Voit was ready for his deposition. Defense counsel objected and informed the attorney ... that if Voit did not appear for his deposition on November 30th, the defendants would move for dismissal of the case.

Voit, 31 Fed.Appx. at 190.

The plaintiff failed to appear for the November 30 deposition. The defendant moved to dismiss, and a hearing was scheduled. The plaintiff again failed to attend the hearing. A show cause hearing was subsequently scheduled, and the plaintiff did not appear. The court dismissed the case with prejudice concluding that the plaintiff acted willfully in his failure to participate in discovery and comply with a court order.

With the foregoing circuit court cases, as well as the four Regional Refuse factors in mind, the Court will now examine whether the case should be dismissed under Rule 37.

*Whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault?*

The Court notes that in University Housing's first attempt to depose Ms. Johnson, it sent her a letter offering several dates to take her deposition. Ms. Johnson had the choice to choose a date convenient for her, but instead intransigently rejected all the dates, claiming that she was not available for deposition until, at the earliest, February 1, 2007. There was no valid reason given why

11

Ms. Johnson rejected all the dates offered by University Housing.

In response, University Housing, on its own initiative and after being flatly rejected by Ms. Johnson, set the deposition date for December 6, 2006. This prompted Ms. Johnson to file a motion to change the deposition date, contending that the dates University Housing offered were not in consideration of her schedule. Ms. Johnson also stated that she would not be available for a deposition until January 12, 2007. University Housing therefore moved the deposition to January 17, 2007.

Ms. Johnson failed to appear for her deposition scheduled for January 17, 2007, and did not call or notify University Housing regarding her plans not to appear for the deposition. During a telephone conference with the Magistrate Judge on that day, Ms. Johnson claimed that she was out of town caring for her sick mother and requested an indefinite suspension of the discovery rules to suit her needs. The Magistrate Judge rejected that request, and University Housing rescheduled the deposition for February 26, 2007. The Magistrate Judge indicated that, in the future, Ms. Johnson would be granted a brief extension only with a valid medical excuse**.**

On February 5, 2007, Ms. Johnson filed a motion to extend the time for her deposition "to a date not prior to April 1 and not later than April 14, 2007," (Motion to Extend Deposition Date and to File Supporting Documents Under Seal (doc. #28)), allegedly "due to extraordinary circumstances in her personal life," (id.). It appears that the motion was not directly ruled on, and Ms. Johnson again, without notice to University Housing, failed to appear for the scheduled February 26, 2007 deposition.

Consequently, on June 11, 2007, the Magistrate Judge granted Ms. Johnson's motion for an extension of time and ordered that Ms. Johnson's "deposition must take place no later than July 31, 2007. There will be no extension of this date at plaintiff's request, for any purpose. Moreover, plaintiff is EXPRESSLY ADVISED that her failure to participate in a deposition on or before July 31, 2007, will result in the dismissal of the action pursuant to the provisions of F.R. Civ. P. 37." (Opinion and Order (doc. #47) p. 2). In response to that order, however, it is unclear whether Ms. Johnson failed to appear for a another deposition. Nowhere on the docket, or in University Housing's motion to dismiss, does it indicate that Ms. Johnson's deposition was scheduled pursuant to the Court's June 11, 2007 order. Because the Court gave Ms. Johnson one final chance to be deposed and there is no evidence that she failed to obey that order, the Court must deny the motion

to dismiss without prejudice. If Ms. Johnson's deposition was in fact scheduled on or before July 31, 2007, and Ms. Johnson failed to appear in violation of the June 11, 2007 order, University Housing may so inform the Court and renew its motion to dismiss.

II. University Housing's Motion for an Order Declaring Ms. Johnson a Vexatious Litigator/Ms. Johnson's Motion to Strike

University Housing also has requested that the Court declare Ms. Johnson a vexatious litigator under Ohio Revised Code § 2323.52. In support of its argument, University Housing highlights, inter alia, three lawsuits (other than this current one) that Ms. Johnson filed against various individuals and entities resulting from University Housing allegedly refusing to lease an apartment to her on the basis of her race. All three lawsuits were filed in the United States District Court for the Southern District of Ohio.[2]

In the first lawsuit, Johnson v. Grim, No. 2:06-cv-739, Ms. Johnson, proceeding pro se and in forma pauperis, sought $250,000,000.00 in damages against an Athens Municipal Court Judge and the Athens County Clerk of Courts. The case stemmed from the eviction proceeding that occurred as a result of University Housing refusing to lease to Ms. Johnson.[3] That case was

---

[2] University Housing did not file all the docket entries associated with these three cases. The Court notes, however, that it may take judicial notice under Fed.R.Evid. 201(b)(2) and review the filings and dispositions of those cases, because the Court's own docket can be classified as a judicially noticed fact that is not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. See, e.g., United States v. Doss, 563 F.2d 265, 266 n. 2 (6th Cir.1977)(the court of appeals could take judicial notice of its own records).

[3] The following alleged facts are taken directly from University Housing's motion to declare Ms. Johnson a vexatious litigator. This factual recitation provides some background to the various lawsuits that Ms. Johnson filed and is supported by two affidavits and an Athens County Municipal Court entry of judgment.

> This lawsuit arises out of the Plaintiff['s] ... eviction from a rental property managed by Defendant, University Housing. G. Maxine Young is a licensed rental agent/licenced real estate agent employed by University Housing. In her capacity as a rental agent, Young manages the property and collects quarterly rent for the owners of some of the condominiums including Unit 506 ... known as University Commons. Plaintiff, Cyndi Johnson, occupied Unit 506 at University Commons pursuant to a sublease with the original tenant, Daniel Casto. Pursuant to the terms

13

dismissed pursuant to 28 U.S.C. § 1915 for failing to state a claim on which relief may be granted.

In the second lawsuit, Johnson v. Young, No. 2:06-cv-818, Ms. Johnson, again proceeding pro se and in forma pauperis, filed suit against University Housing's rental agent seeking $25,000 in damages for failing "to serve a federally required 30 day notice upon the tenant (Plaintiff) and verify debt, prior to commencing legal action for collection of debt." (Johnson v. Young, No. 2:06-cv-818, Compl. (doc. #4) at p. 5). Summary judgment was entered in that case against Ms. Johnson.

In the final lawsuit stemming from Ms. Johnson's eviction, Johnson v. Ohio Civil Rights Commission, No. 2:06-cv-626, Ms. Johnson, proceeding pro se and in forma pauperis, filed suit against the Ohio Civil Rights Commission ("OCRC") alleging various forms of racism and discrimination against the OCRC investigator assigned to review Ms. Johnson's claim of racism

---

of the sublease agreement, Johnson was responsible for making the final two $1,875.00 quarterly rent payments due on January 15, 2006 and April 15, 2006.

Johnson was late with the rent payment for April 15, 2006. Delinquent rent notices were sent to Johnson by Young in April and May 2006. Eviction proceedings were nearly commenced in May, 2006, but were halted when the original tenant, Daniel Casto, honored his obligation pursuant to the lease agreement by paying the quarterly rent payment which Johnson had failed to pay.

Subsequently on May 22, 2006, Young wrote Johnson a letter communicating to her the condominium owner Mr. Valente's decision not to enter into a lease agreement with Johnson at the end of the sub-lease due to her failure to pay a quarter of rent, and her failure to obtain a co-signor for a proposed new lease term. On August 2, 2006, Young served Johnson with a Notice to Leave Premises due to Johnson's status as a holdover tenant. Johnson failed to vacate the premises resulting in an eviction action being filed in the Athens County Municipal Court on August 9, 2006.

On August 29, 2006, the Athens County Municipal Court rejected Johnson's claims of discrimination, granted judgment in favor of Mr. Valente on the forcible entry and detainer portion of his complaint against Plaintiff, Cyndi Johnson, and ordered Unit 506 restored to Mr. Valente effective August 31, 2006. On August 29, 2006, Plaintiff, Johnson, filed a "Motion for Change of Judge" in the Athens County Court of Common Pleas. That case was assigned Case Number 06CI315. On August 29, 2006, the Athens County Court of Common Pleas entered a Decision and Judgment Denying Plaintiff, Johnson's Motion.

(Motion for an Order Declaring Plaintiff a Vexatious Litigator (doc. #55) at pp. 2-3 (internal citations omitted)).

14

against University Housing. That case was dismissed under 28 U.S.C. § 1915 for failing to state a claim on which relief may be granted.

Additionally, University Housing points to other unrelated cases where Ms. Johnson, proceeding pro se and in forma pauperis, has filed suit in this Court and the case has been dismissed: Johnson v. Wendy's Restaurant, No. 05-cv-1060 (dismissed pursuant to Fed.R.Civ. 37 for failing to comply with discovery orders); Johnson v. Harris, No. 06-cv-892 (dismissed under 28 U.S.C. § 1915 for failing to state a claim on which may be granted); Johnson v. Ohio University, No. 06-cv-530 (dismissed for lack of jurisdiction); Johnson v. Carpinellli, No. 06-cv-819 (dismissed under 28 U.S.C. § 1915 for failing to state a claim on which relief may be granted); and Johnson v. Moran Technology Consulting, No. 06-cv-614 (summary judgment granted in favor of the defendant because she failed to produce evidence). Although not cited by University Housing, the Court also highlights Johnson v. The Athens Messenger, No. 07-cv-601 (dismissed under 28 U.S.C. § 1915 because it was frivolous and the Court lacked jurisdiction). University Housing additionally cites two Ohio state court proceedings.

In sum, based on all these filings - despite the fact that some filings do not involve University Housing - the defendants seek injunctive relief claiming:

> Plaintiff's conduct will and is causing the Defendant harm by forcing Defendant to expend financial resources to deal with allegations with no legal merit and forcing Defendant to incur legal costs to defend against claims lacking in any legal merit. Defendant has no adequate legal remedy at law. Plaintiff's actions entitle Defendant to injunctive relief prohibiting Plaintiff from directly or indirectly instituting a legal proceeding, continuing a legal proceeding or making any application for relief or filing any motions in a legal proceeding in a court of common pleas, municipal court or county court, court of appellate jurisdiction or any federal court without first obtaining leave of that court to proceed.

(Motion for an Order Declaring Plaintiff a Vexatious Litigator (doc. #55) at pp. 2-3 (internal citations omitted)).

In response, Ms. Johnson filed a motion to strike University Housing motion for an order declaring her a vexatious litigator. Ms. Johnson stated, "Plaintiff moves the Court for an order to strike Wines['] latest display of 'dumb attorney tricks.' Defendant needs to address the complaint. Young, Casto, and University Housing Management Services Inc[.] are not parties to this case. Plaintiff[']s other litigation has no bearing on this matter." (Motion to Strike Defendant's Motion

15

for an Order Declaring Plaintiff a Vexatious Litigator (doc. #60)).

Preliminarily, the Court notes that the Court of Appeals for the Sixth Circuit has never addressed the issue of whether a federal district court may determine an individual to be a vexatious litigator under O.R.C. § 2323.52.  It is clear, however, that O.R.C. § 2323.52, a procedural statute designed to protect the Ohio state courts from vexatious litigation, has no application to proceedings in federal court.  Federal courts have recognized their own inherent power and constitutional obligation to protect themselves from conduct that impedes their ability to perform their Article III functions and to prevent litigants from encroaching on judicial resources that are legitimately needed by others.  Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir.1986).  The Sixth Circuit Court of Appeals has approved various prefiling restrictions imposed on harassing and vexatious litigators as an inherent constitutional and statutory power of the federal courts.  See, e.g., Filipas v. Lemons, 835 F.2d 1145 (6th Cir.1987)(noting courts have authority to impose restrictions on harassing and vexatious litigators); Feathers v. Chevron U.S.A., 141 F.3d 264, 269 (6th Cir.1998)(affirming courts ability to impose prefiling restrictions in matters with a history of vexatious litigation); Wrenn v. Vanderbilt Univ. Hosp., Nos. 94-5453, 94-5593, 50 F.3d 11 (6th Cir. Mar. 15, 1995)(unpublished) ("This court has the authority to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a) ...").

In the instant case, the Court notes that this is the fourth lawsuit filed in the United States District Court for the Southern District of Ohio stemming from University Housing failing to lease an apartment to Ms. Johnson.  These cases, coupled with the numerous other non-lease related (and now dismissed) lawsuits in this Court, put Ms. Johnson in a precarious situation because this Court is well within its power, should it chose, to declare her to be a harassing and vexatious litigator and subsequently impose prefiling restrictions.  See, e.g., Chance v. Todd, 74 Fed.Appx. 598 (6th Cir. Sept. 10, 2003)(unpublished)(affirming district court's decision to impose prefiling restrictions on a harassing plaintiff after only four previously frivolous lawsuits); Marbly v. Kay, 238 F.3d 422 (6th Cir. Dec. 8, 2000)(unpublished)(affirming district court's decision to impose prefiling restrictions on a harassing and vexatious litigant after eight duplicative lawsuits).  However, while Ms. Johnson may have been warned that her failure to participate in discovery or comply with Court orders could warrant dismissal of her case, there appears to be no warnings in other previously filed suits that, given Ms. Johnson's litigation history, she could be declared to be a harassing and vexatious

16

litigator.

The Court therefore concludes that it is in better discretion to issue Ms. Johnson a formal warning that another frivolously filed lawsuit, including a lawsuit that is dismissed pursuant to Fed.R.Civ.P. 37, regardless of the lawsuits subject matter, could result in this Court declaring her a harassing and vexatious litigator and imposing prefiling restrictions on her before she can file suit in this Court. These restrictions could include, but are not limited to, requiring Ms. Johnson file a bond to cover the opposing party's attorney's fees, see, e.g., Stewart v. Fleet Financial, 229 F.3d 1154 (6th Cir. Aug. 10, 2000)(requiring harassing and vexatious litigator to file $25,000 bond prior to filing suit is not an abuse of discretion); limiting the nature or subject of the lawsuit, see, e.g., Feathers, 141 F.3d at 269 ("[W]e see nothing wrong, in circumstances such as these, with an order that restrains not only an individual litigant from repeatedly filing an identical complaint, but that places limits on a reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category"); or mandating that Ms. Johnson first seek leave of court prior to filing a lawsuit, see, e.g., Marbly v. Wheatley, 87 Fed.Appx. 535 (6th Cir. Feb. 4, 2004)(unpublished). Accordingly, University Housing's motion to declare Ms. Johnson a vexatious litigator is denied, without prejudice to it being refiled if Ms. Johnson files another lawsuit against the defendant. Ms. Johnson's motion to strike has no merit and is denied.

III.

Based on the foregoing, University Housing's motion to dismiss (doc. # 64) is DENIED WITHOUT PREJUDICE because the record is unclear as to whether Ms. Johnson violated the Court's June 11, 2007 order. If Ms. Johnson's deposition date was in fact scheduled on or before July 31, 2007, and Ms. Johnson failed to appear in violation of the June 11, 2007 order, University Housing may so inform the Court and renew its motion to dismiss.

Further, University Housing's motion to declare Ms. Johnson a vexatious litigator (doc. #55) is DENIED WITHOUT PREJUDICE. Ms. Johnson's motion to strike (doc. #60) is also DENIED.

**IT IS SO ORDERED.**

Date: December 10, 2007 /s/ John D. Holschuh
John D. Holschuh, Judge
United States District Court